Not for Publication

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GREGORY H.,**<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>　　　　　　　　Defendant. | Civil Action No.: 22-5795 (ES)<br><br>**OPINION** |

**SALAS, DISTRICT JUDGE**

*Pro se* plaintiff Gregory H. ("Plaintiff" or "Claimant") appeals the decision of the Commissioner of Social Security denying his application for disability insurance benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*. (*See* D.E. No. 1). The Court decides this matter without oral argument. *See* Fed. R. Civ. P. 78(b). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

**I.　　BACKGROUND**

On July 18, 2019, Plaintiff filed an application for DIB, claiming disability based on cardiovascular disease beginning August 2, 2010, which was denied initially and on reconsideration. (D.E. No. 5, Administrative Record ("R.") at 20). On January 7, 2021, an Administrative Law Judge (ALJ) held a hearing by telephone, at which Plaintiff and a vocational expert testified. (*Id.*).

On September 29, 2021, the ALJ denied Plaintiff's application for DIB. (*Id.* at 28). The ALJ held that Plaintiff is not disabled under the Act because Plaintiff had the residual functional capacity ("RFC") to perform his past relevant work ("PRW") as an investment analyst. (*Id.* at 27–

1

28). The ALJ first determined that the relevant period in Plaintiff's case was from August 2, 2010, the alleged onset of the disability, to December 31, 2015, the date on which Plaintiff was last insured. (*Id.* at 21). The ALJ found that Plaintiff had an RFC allowing for perform light work, with a few limited exceptions. (*Id.* at 24). Specifically, the ALJ determined that Plaintiff had an RFC "to perform light work as defined in 20 CFR 404.1567(b) except as follows: he cannot climb ropes, ladders, or scaffolds or work at heights. He cannot operate dangerous machinery (defined as machines that cut or shear). He should not have exposure to pulmonary irritants and temperature extremes." (*Id.*). The ALJ then concluded that "[t]hrough the date last insured, the claimant was capable of performing past relevant work as an investment analyst," which did not require Plaintiff to perform any of the tasks that were beyond his residual function capacity. (*Id.* at 27). Therefore, the ALJ held that Plaintiff was not disabled between August 2, 2010, and December 31, 2015. (*Id.* at 28).

On July 27, 2022, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (*Id.* at 9). Plaintiff filed the instant appeal on September 30, 2022, which the Court has subject-matter jurisdiction to decide under 42 U.S.C. § 405(g). (D.E. No. 1). On April 10, 2023, Plaintiff filed a brief in support of the appeal. (D.E. No. 10 ("Mov. Br.")). The Commissioner filed a brief in opposition and Plaintiff thereafter filed a Reply. (D.E. No. 13 ("Opp. Br."); D.E. No. 14 ("Reply")).[1]

---

[1] Plaintiff also filed an additional brief requesting that the Court grant summary judgment. (*See* D.E. No. 16). In this brief, Plaintiff continues to make the singular argument raised in both his moving brief and reply brief. (*See id.*). As an initial matter, the Court notes that Plaintiff's summary judgment motion is improper. The Federal Rules of Civil Procedure's Supplemental Rules for Social Security Actions under 42 U.S.C. § 405(g), which governs social security matters, only provide for the submission of an initial brief filed by the plaintiff, followed by the defendant's responsive brief, which may be followed by plaintiff's reply brief. *See id.*, Rules 6–8. Here, Plaintiff has not been granted leave to file an additional brief. The Court will therefore decline to consider the arguments raised in the motion for summary judgment. Even if the Court were to consider the motion, the motion adds nothing new for the Court to consider, with the motion itself stating that "[t]he dispute here remains as it was stated in Plaintiff's initial brief." (D.E. No. 16 at 2).

## II. LEGAL STANDARD

### a. Standard Governing Benefits

To qualify for DIB, a claimant must show that he is disabled within the meaning of the Act. 42 U.S.C. § 423(a)(1)(E). Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A); *Fargnoli v. Massanari*, 247 F.3d 34, 38–39 (3d Cir. 2001). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). "'Work which exists in the national economy' means work which exists in significant numbers either in the region where such individual lives or in several regions of the country." *Id.*

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520 & 416.920). "The claimant bears the burden of proof for steps one, two, and four," and "[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2. If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. § 404.1520(a)(4) (2012).

***Step One***. First, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. 20 C.F.R. § 404.1520(a)(4)(i). If an

3

individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as "age, education, and work experience." 20 C.F.R. § 404.1520(b).

*Step Two*.   Second, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured.   20 C.F.R. § 404.1520(a)(4)(ii).   A "severe" impairment significantly limits a claimant's physical or mental ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities."  *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c) & 416.920(c)).

*Step Three*.   Third, the claimant may show, based on medical evidence, that as of the date last insured, his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). *See* 20 C.F.R. § 404.1520(a)(4)(iii).  If the claimant makes such a showing, he is presumptively disabled and entitled to benefits.  If he does not make the showing, he proceeds to step four.

*Step Four*.   Fourth, the claimant must show that, as of the date last insured, he lacked the RFC to perform his past relevant work.  20 C.F.R. § 404.1520(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If, as of the date last insured, the claimant lacked the RFC to perform his past relevant work, the analysis proceeds.  *See, e.g.*, *Plummer*, 186 F.3d at 429.

*Step Five*.   Finally, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  20 C.F.R. § 404.1520(a)(4)(v).  If the Commissioner finds

that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits. *See id.*

      **b.**      **Standard of Review**

The Court "exercise[s] plenary review over legal conclusions reached by the Commissioner." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). But the "findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). As a term of art used throughout administrative law, the term "substantial evidence" may vary depending on the context. *See Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). In this context, "the threshold for such evidentiary sufficiency is not high." *Id.* Importantly, the substantial evidence standard does not give rise to categorical rules but rather depends on a "case-by-case" inquiry. *Id.* at 1157. "Substantial evidence" is at least more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)); *accord Biestek*, 139 S. Ct. at 1154. And although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance." *McCrea*, 370 at 60. Substantial evidence may exist, and the Court must affirm, "even if [the Court] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006). The Court cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).

### III. THE ALJ's DECISION

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity between August 2, 2010, and December 31, 2015, the date Plaintiff was last insured. (R. at 23).

At step two, the ALJ concluded that, during the relevant period, Plaintiff suffered from the following severe impairments: "a history of coronary artery disease with ischemic cardiomyopathy, status-post coronary stenting, and status-post defibrillator implants." (*Id.*). The ALJ held that these impairments "significantly limit the ability to perform basic work activities as required by [Social Security Regulation] 85-28." (*Id.*).

At step three, the ALJ found that Plaintiff's impairments did not meet the requirements for any of the impairments listed in 20 C.F.R Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (*Id.* at 23–24). In making this determination, the ALJ considered (i) Listing 4.02 for chronic heart failure, (ii) Listing 4.04 for ischemic heart disease; and (iii) Listing 4.05 for recurrent arrhythmias. Specifically, regarding Listing 4.02 (for chronic heart failure), the ALJ found that Plaintiff did not have any of the following criteria required for the listing:

> systolic or diastolic failure resulting in persistent symptoms of heart failure which very seriously limited his ability to actively initiate, sustain, or complete activities of daily living; three or more separate episodes of acute congestive heart failure within a consecutive 12-month period; or an inability to perform on an exercise tolerance test at a workload equivalent to 5 METs or less.

(*Id.* at 24). The ALJ noted that Plaintiff, despite having an ejection fraction of 30% or less,[2] did not show that he had persistent symptoms of heart failure that "limited his ability to actively

---

[2] "Ejection fraction is a measurement of the percentage of blood that is pumped out of a filled ventricle with each heartbeat. A normal ejection fraction is about 50% to 75%. A reduced ejection fraction may be caused by weakness of the heart muscle, such as cardiomyopathy; a heart attack that damaged the heart muscle; heart valve problems; or long-term, uncontrolled high blood pressure." *Plank v. Kijakazi*, No. 20-2507, 2022 WL 2916682, at *3 n.2 (E.D. Pa. July 25, 2022).

initiate, sustain, or complete activities of daily living," because there was evidence in the record showing that Plaintiff was "running and exercising" during the relevant period. (*Id.*). Additionally, the ALJ concluded that the record failed to show "*multiple* episodes of acute congestive heart failure within a 12-month period or an inability to perform an exercise tolerance test." (*Id.* (emphasis added)).

Next—and most relevant for this appeal—the ALJ found that Plaintiff did not meet the criteria for Listing 4.04 (for ischemic heart disease) because there was insufficient evidence in the record to find that Plaintiff met any of the criteria listed in 4.04. (*Id.*). The ALJ determined that Plaintiff failed to provide an exercise tolerance test; the record lacked any evidence showing "three separate ischemic episodes, each requiring revascularization or not amenable to revascularization, within a 12-month period"; and Plaintiff did not provide any "angiographic evidence" of significant narrowing of an artery or vessel, or demonstrate "serious limitations" in his daily life caused by the purported disability, because the evidence showed that he was "able to run and exercise." (*Id.*).

Finally, with respect to Listing 4.05 (for recurrent arrhythmias), the ALJ determined that Plaintiff failed to meet the criteria "because there [was] no evidence of uncontrolled, recurrent episodes of cardiac syncope or near syncope, despite prescribed treatment, and documented by resting or ambulatory (Holter) electrocardiography, or by other appropriate medically acceptable testing, coincident with the occurrence of syncope or near syncope." (*Id.*). As such, the ALJ ultimately determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the impairments listed by the regulations. (*Id.*).

At step four, the ALJ found that Plaintiff

> had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except as follows: he cannot climb ropes,

>ladders, or scaffolds or work at heights. He cannot operate dangerous machinery (defined as machines that cut or shear). He should not have exposure to pulmonary irritants and temperature extremes.

(*Id.* at 24). In making this RFC determination, the ALJ considered the evidence in the record and found that "the nature, scope, and findings from his longitudinal treatment records are not supportive of the intensity or persistence of his subjective allegations." (*Id.*). The ALJ determined that "when considered as a whole, the evidence reasonably supports a finding that the claimant is limited by his impairments, but those limitations, as well as his subjective complaints, are adequately accommodated by the assigned residual functional capacity of light work." (*Id.*). The ALJ then relied on the testimony of the vocational expert, who determined that an individual with Plaintiff's limitations would still be able to work as an investment analyst, the job performed by Plaintiff in the past. (*Id.* at 28). As such, the ALJ found that Plaintiff was not disabled at step four.

**IV.   DISCUSSION**

Plaintiff raises one issue on appeal. (*See generally* Mov. Br.). Plaintiff challenges the ALJ's determination at step three, arguing that the ALJ erred in finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 4.04 for ischemic heart disease. Specifically, Plaintiff asserts that the ALJ entirely failed to consider evidence of his three past angioplasties which occurred in 2006. (*Id.* at 1). Plaintiff argues that this evidence meets the qualifying criteria in Listing 4.04(B), which requires that the claimant suffered "[t]hree separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12-month period." (*Id.*).[3] In

---

[3] Plaintiff improperly—and vaguely—points to other potential errors made by the ALJ for the first time in his reply brief (*see* Reply at 11–12). *See Ribaudo v. Saul*, No. 17-7207, 2020 WL 5088635, at *10 (D.N.J. Aug. 28, 2020) (noting that courts may decline to consider arguments raised for the first time in a reply brief in a social security

opposition, the Commissioner argues that the three angioplasties relied upon by Plaintiff did not occur "during the relevant period from his alleged onset date through his date last insured." (Opp. Br. at 10). Therefore, the Commissioner asserts, this evidence does not show that Plaintiff has met the listing criteria. (*Id.* at 10–11).

For the following reasons, the Court agrees with the Commissioner: the angioplasties that Plaintiff refers to occurred four years before the alleged onset of the disability, and the ALJ was not required to consider evidence outside of the relevant period. Moreover, the ALJ's overall findings with respect to Listing 4.04 are all supported by substantial evidence from the record.

A claimant is presumptively disabled under Listing 4.04 for ischemic heart disease, if he can make one of three showings. First, the claimant can provide a "[s]ign-or symptom-limited exercise tolerance test demonstrating at least one of [several] manifestations at a workload equivalent to 5 METs or less." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.04(A) (2023). Second, a claimant may satisfy the listing by demonstrating "[t]hree separate ischemic episodes, each requiring revascularization or not amenable to revascularization (see 4.00E9f), within a consecutive 12–month period." *Id.* § 4.04(B). Third, the Claimant may also show "[c]oronary artery disease, demonstrated by angiography . . . or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC [(a medical consultant)], preferably one experienced in the care of patients with

---

appeal). Even if the Court were to consider those arguments, Plaintiff concedes that "none of these errors would necessarily alter the final decision by themselves," and states that the ALJ's purported error in the listings analysis is the only error that "would alter the final decision." (Reply at 12). Indeed, Plaintiff states that "although he explicitly requests that the Court reverse the decision of the ALJ, he does not do so on grounds founded on most of the Defendant's Response Brief, nor on any claim that the ALJ did not possess sufficient medical information to properly adjudicate the case, nor on grounds of some technical error or anything of the sort. The Plaintiff requests that the decision be reversed *simply because the ALJ plainly ignored the indisputably decisive evidence* [concerning 4.04(B)]. As the Initial Brief could not have made clearer, that is the only assertion by the Plaintiff that is material to the case." (*Id.* at 3 (emphasis added)). Thus, the additional arguments raised in Reply are concededly not reversible error nor the subject of this appeal, and the Court therefore declines to address them.

cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual," in addition to angiographic evidence showing significant narrowing of an artery or blood vessel which results "in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living." *Id.* § 4.04(C).

As noted, Plaintiff argues that the ALJ erred in finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 4.04 because the ALJ concluded that Plaintiff did not suffer "three separate ischemic episodes, each requiring revascularization or not amenable to revascularization, within a 12-month period." (R. at 24). Plaintiff contends that stent cards in the record show he underwent three angioplasties within one year, satisfying 4.04(B), and that the ALJ entirely failed to consider this evidence. (*See* R. at 366–67; Reply at 5–6). However, the evidence to which that Plaintiff points indicates that the three angioplasties occurred in 2006, well before the alleged onset date of the disability in 2010. (*See* R. at 366–67). The ALJ "may reject evidence that predates the relevant period and, therefore, may limit her analysis to the medical evidence in the record that follows Plaintiff's alleged onset date." *Gonzalez v. Colvin*, No. 14-4608, 2016 WL 1463990, at *4 (D.N.J. Apr. 13, 2016) (internal quotation marks and citation omitted); *see also Gonzalez v. Saul*, No. 17-02524, 2019 WL 13401378, at *13 (D.N.J. Oct. 31, 2019) ("Evidence of Plaintiff's hospitalizations prior to the relevant period are not relevant to the Step Three analysis."). Therefore, the ALJ was not required to consider evidence outside of the relevant period—the time between Plaintiff's alleged disability onset date and his date last insured—in determining whether Plaintiff met the requirements of 4.04(B). This is especially so where, as here, Plaintiff returned to work for years after the ischemic episodes in question. (*See* R. 27, 42 & 233–34 (ALJ found that "[e]arnings records and a work history report show the claimant performed work as an investment analyst from

1998 to 2010 at substantial gainful activity (SGA) levels"); 20 C.F.R. § 404.1520(b) (noting that if a claimant is "doing substantial gainful activity, we will find that you are not disabled")). And the definition of a "consecutive 12-month period" specifies that it "means a period of 12 consecutive months, *all or part of which must occur within the period we are considering in connection with an application or continuing disability review*." 20 C.F.R. pt. 404, subpt. P, app. 1, § 4.00A3e (emphasis added). Here, it is clear that Plaintiff's ischemic episodes did not occur within the period the ALJ was considering in connection with his DIB application. Thus, it was not error for the ALJ to decline to consider Plaintiff's angioplasties which occurred years before the alleged onset date of his disability.

Moreover, the ALJ's overall analysis of the evidence from the relevant time period in regard to Listing 4.04 was supported by substantial evidence. The ALJ clearly identified the requirements of 4.04(A), (B), and (C), and found that there was nothing in the record to satisfy the requirements. Regarding Listing 4.04(A), the ALJ noted that Plaintiff did not provide a "sign or symptom-related exercise tolerance test." (R. at 24). For Listing 4.04(B), the ALJ determined that there was no evidence of three ischemic episodes within one year that occurred during the relevant period. (*Id.*). For Listing 4.04(C), the ALJ determined that Plaintiff failed to provide angiographic evidence of significant narrowing of arteries or vessels and that Plaintiff was not severely limited in his daily life because the record showed that Plaintiff was "able to run and exercise." (*Id.*). Plaintiff does not challenge any of these conclusions beyond the argument regarding his 2006 angioplasties. Accordingly, the Court finds that the ALJ's findings are based on substantial evidence. *See Oosterkamp v. Kijakazi*, No. 20-0138, 2021 WL 4459773, at *3 (W.D. Pa. Sept. 29, 2021) (affirming ALJ's determination that claimant did not meet the requirements of Listing 4.04 when (1) there was no evidence in the record of an exercise tolerance test, (2) no evidence of three

separate ischemic episodes within one year, and (3) no evidence of coronary artery disease resulting in severe limitations to daily life.). And to the extent that Plaintiff expresses disagreement with the ALJ's decision, disagreement is not a basis to disturb an ALJ's decision, which here is supported by substantial evidence. *See Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 688 (3d Cir. 2020).

## V.     CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the commissioner. An appropriate Order follows.


**Dated:** August 6, 2024                                                                 *s/Esther Salas*
                                                                                          **Esther Salas, U.S.D.J.**